# IN THE COURT OF APPEALS OF IOWA

No. 23-1031
Filed April 24, 2024

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**CHRISTOPHER WAYNE KACKLEY,**
　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Adam D. Sauer, Judge.

A defendant appeals his sentences for burglary, possession of burglar tools, and possession of methamphetamine. **SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Joshua A. Duden, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Badding and Buller, JJ.

**TABOR, Presiding Judge.**

"[A] good sentence is one which can reasonably be explained . . . ." *State v. Matlock*, 304 N.W.2d 226, 228 (Iowa 1981) (discussing practical purpose of rule requiring court to state the reason for its sentence). As Christopher Kackley argues on appeal, the district court gave no explanation for sending him to prison. That omission prevents us from reviewing the district court's exercise of discretion. Thus, under Iowa Rule of Criminal Procedure 2.23(3)(d),[1] we must vacate the sentence and remand for resentencing.

In December 2022, condominium residents called Mason City police when they discovered Kackley taking valuables from their storage units. Before the officers arrived, Kackley fled on foot. Police soon located him by tracking his shoeprints through the snow. When arrested, he was carrying stolen items and two pry bars. At the jail, officers found methamphetamine in his underwear.

The State charged Kackley with burglary in the second degree as a habitual offender, possession of burglar's tools, and possession of methamphetamine. In a deal with the State, Kackley agreed to plead guilty to third-degree burglary (a class "D" felony in violation of section 713.6A(1) (2022)), possession of burglar's tools (an aggravated misdemeanor in violation of section 713.7), and possession of methamphetamine (a serious misdemeanor in violation of section 124.401(5)). In return, the State did not pursue the habitual offender enhancement. The State also agreed that if Kackley was accepted into drug court, he should receive

---

[1] That rule provides, "The court shall state on the record its reason for selecting the particular sentence." Effective July 1, 2023, the rule was renumbered as 2.23(2)(g). Kackley's sentencing occurred on June 28, 2023.

suspended sentences on the chapter 713 counts and a two-day jail sentence for drug possession. If he was not accepted into drug court, the State would recommend concurrent prison terms.

As it turns out, Kackley was not accepted into the drug court. So, at sentencing, the State recommended he serve indeterminate prison terms of five years for the class "D" felony and two years for the aggravated misdemeanor, concurrently.[2] The State acknowledged that it was appropriate for the court to consider Kackley's need for drug treatment and other help but asserted "he's had lots of chances." The State summarized Kackley's criminal history:

> [T]his isn't the first time around, this isn't the second time around, he's been through this at least seven times and he's been sent to prison seven times so prison again of course is necessary because at some point rehabilitation is always the goal; but at some point it has to be realized that's not working and the best result is to put someone away out of the ability to commit crimes for as long as the crimes they've been convicted to allows and I urge the Court to do so in this case.

Defense counsel argued that Kackley could not receive the services and treatment he needed in prison.[3] Counsel urged the court to grant his client probation so he could receive treatment in the community for his drug addiction: "A sober Christopher Kackley who is working, who is maintaining sobriety is a benefit for the community and can be a benefit for himself and his significant other."

Kackley echoed those sentiments in his allocution: "I don't deny that I've committed crimes. And I do want to take responsibility by making amends, but I

---

[2] On the serious misdemeanor possession charge, the court imposed a concurrent two-day sentence with credit for time served.
[3] The presentence investigation report recommended suspended sentences and placement in a residential correctional facility.

cannot get help in prison. I've been there seven times, twice in the State of Iowa, there is no help."

The court denied probation and imposed consecutive prison terms. Kackley appeals, contending the court did not give reasons for choosing those sentences and, alternatively, abused its discretion in imposing a prison term.[4] We review sentencing decisions for correction of legal error. *State v. Chapman*, 944 N.W.2d 864, 871 (Iowa 2020). Generally, if a sentence is within the statutory maximum we will only interfere if the trial court abuses its discretion. *State v. Luedtke*, 279 N.W.2d 7, 8 (Iowa 1979). But for "such a standard to operate, it is essential for the trial court to state the reasons for selecting a particular disposition. Without such a record, there would be nothing from which we could discern any abuse of sentencing discretion." *Id.*

Kackley asks for resentencing because the district court did not comply with rule 2.23(3)(d). He contends that the court's statements at the sentencing hearing "tell us nothing about how the court arrived at these particular sentences in this particular case." As for the written sentencing order, he insists that the "boilerplate" list of considerations does not satisfy the rule. We agree.

At the hearing, the court accurately expressed the factors that it should weigh in determining an appropriate sentence:

> Iowa law requires that the Court impose a sentence that considers your need for and your potential for rehabilitation as well as the necessity of protecting the community from further offenses by you and others. A lot of factors go into that your age, your prior criminal history, your employment, your family circumstances, the nature of the offense, obviously the content of the pre-sentence

---

[4] Because Kackley challenges only his sentences, he has good cause to appeal. Iowa Code § 814.6(1)(a)(3); *State v. Damme,* 944 N.W.2d 98, 105 (Iowa 2020).

investigation report, and anything else that I have been able to learn through today's proceeding and also through the court file.

But the sentencing court did not take the next critical step and tell Kackley which of those factors motivated its decision to impose a prison term.

In defending the sentence, the State argues the record reveals the court was "familiar with the details of Kackley's case and that it had reviewed the record many times before sentencing." We don't doubt the court's level of preparation. It's the delivery that fell short. As Justice Neuman forcefully articulated more than twenty years ago: the "integrity of our justice system" demands that defendants be informed "about the consequences of their criminal acts." *State v. Lumadue*, 622 N.W.2d 302, 305 (Iowa 2001). The court did not inform Kackley of its reasons for choosing the prison sentence.

In the State's view, the written sentencing order confirmed that the court "considered each factor when deciding the proper sentence for Kackley." But that order contained only this "boilerplate" passage, stating that the court was:

> taking into account Defendant's age, attitude, criminal history, and employment, financial and family circumstances, as well as the nature of the offense, including whether a weapon or force was used in the commission of the offense, the recommendations of the parties, and other matters reflected in the Court file and record, including the presentence investigation report, for the protection of society and rehabilitation of Defendant.

Our supreme court has "rejected a boilerplate-language approach that does not show why a particular sentence was imposed in a particular case." *See State v. Thacker*, 862 N.W.2d 402, 408 (Iowa 2015).

Because the court did not state a reason for the prison terms at the hearing or in its written order, we vacate the sentence and remand for resentencing.[5]  We do not express an opinion on what the new sentence will be once the court explains its rationale.  *See Luedtke,* 279 N.W.2d at 8 (allowing court latitude to impose different sentence after appeal).

**SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

Badding, J., concurs; Buller, J., dissents.

---

[5] Because this sentencing record is inadequate for our review of the court's discretion, we do not reach Kackley's second issue.  *See State v. Cooper*, 403 N.W.2d 800, 802 (Iowa Ct. App. 1987).

**BULLER, Judge** (dissenting).

I cannot join the majority's opinion vacating Kackley's sentence. Although the district court's oral pronouncement was less than ideal, I would affirm based on the written sentencing order—use of which is increasingly common under the revised rules of criminal procedure. I dissent.

I agree with some of the majority's criticism of the oral reasons for sentence. But I've read enough transcripts of my own oral statements that I'm not inclined to armchair-quarterback a busy sentencing judge's phrasing from the comfort of appellate review. It's a close question whether the "terse and succinct" oral explanation here was independently sufficient to permit appellate review. *See State v. Thacker*, 862 N.W.2d 402, 408 (Iowa 2015); *State v. Thompson*, No. 19-1018, 2020 WL 6157788, at *1 (Iowa Ct. App. Oct. 21, 2020) (affirming a very similar explanation). Fortunately, we have more than the oral pronouncement: reasons for sentence were also given in a written sentencing order.

I find the written explanation quoted in the majority opinion sufficient to permit appellate review. The majority calls it "boilerplate," citing *Thacker*. *See* 862 N.W.2d at 408. But *Thacker* involved a pre-printed form with checkboxes, where the sentencing court checked the "plea agreement" box and the record didn't disclose the agreement's terms. *See* 862 N.W.2d at 410. We have to read *Thacker* alongside a 2014 supreme court case, *State v. Thompson*, which approved the use of technological advances in word processing to memorialize written reasons for sentence. 856 N.W.2d 915, 921 (Iowa 2014). The written

sentencing order here—what the majority calls "boilerplate"—uses word processing and is different from the pre-printed checkbox form in *Thacker*.

As seen below in a screenshot from the order, there is no obvious way for an appellate court to tell from the word processing whether this is "boilerplate," part of a form, unique text typed by the sentencing judge, or some combination:

> **IT IS THEREFORE ORDERED** that taking into account Defendant's age, attitude, criminal history, and employment, financial and family circumstances, as well as the nature of the offense, including whether a weapon or force was used in the commission of the offense, the recommendations of the parties, and other matters reflected in the Court file and record, including the presentence investigation report, for the protection of society and rehabilitation of Defendant **IT IS THE JUDGMENT AND SENTENCE OF THIS COURT** that Defendant is convicted of:

The order lists many factors, so maybe it's part of a form. But the factors seem to apply to this case, so maybe it's not. Or maybe the judge started with a form and deleted factors he thought inapplicable. At least some of the statutory factors are not listed, including mental-health and substance-abuse history. *See* Iowa Code § 907.5(1)(e) (2023). And at least one factor—the defendant's "attitude"—is included in the written explanation but is not part of the standard statutory list. *See id.* § 907.5.

I don't think we should be in the business of reversing criminal sentences based on speculation about how words found their way onto digital paper. And in any event, the language used in this order isn't much different from language we've previously found sufficient. *See State v. Bowdry*, No. 22-1488, 2023 WL 4751799, at *2–3 (Iowa Ct. App. July 26, 2023). I would find the list of reasons in this written sentencing order—particularly when combined with the oral pronouncement at sentencing—sufficient to permit appellate review. That is all our case law requires. *See, e.g.*, *Thacker*, 862 N.W.2d at 408.

As a one-off, re-sentencing a single offender isn't going to cause a massive disruption to our justice system. And the majority is correct to note that the re-sentencing judge may impose any sentence on remand. *See State v. Luedtke*, 279 N.W.2d 7, 8 (Iowa 1979). But there are broader ramifications to condemning the written sentencing order here as "boilerplate" based on recent amendments to the rules of criminal procedure and a resulting change in sentencing practices.

In 2023, consistent with recommendations of a pandemic-era task force, the supreme court amended the rules of criminal procedure to permit guilty pleas and sentencing for class "D" felonies (in addition to indictable misdemeanors) wholly on paper. *See* Iowa R. Crim. P. 2.8(4). I suspect this rule change had the intended effect of moving most "D"-felony pleas and below out of physical courtrooms and onto the electronic filing system—allowing more efficient case processing, reduced costs for litigants and taxpayers, and fewer unnecessary in-person hearings. But if the majority is right that appellate courts can find a written list of sentencing considerations is "boilerplate"—even if the listed factors make sense in context and are not a carbon-copy of the statutory list—it's difficult to see how any wholly-on-paper sentencing with a terse and succinct statement will pass muster. If the supreme court agrees this is "boilerplate," sentencing courts deserve guidance on what explanation of reasons can survive appellate review and what form of word processing is permissible.

Because I would find the written sentencing order sufficient to permit appellate review and there is no proof the written sentencing order was "boilerplate," I dissent.